CASE No. 1133.

## CONEY v. TIMMONS.

1. Land of A. was sold under legal process and purchased by B., who took titles in his own name, but verbally promised to hold the same in trust for Mrs. A.'s benefit, when paid the amount of his bid, and also certain other sums due by A. to B. Before this sale, B. stated that he would purchase for Mrs. A., and, in consequence of such representation, he obtained the property for less than its value. Mrs. A. took possession of the land and retained it, until sold under execution against B., when it was purchased

by C., with full notice of these facts. *Held,* that no time being specified for Mrs. A. to make these payments, and no demand being made by B. for compliance, the contract remained of force, and C., having notice, was bound by its terms.

2. The change of possession was sufficient to take the agreement out of the statute of frauds.

3. The representation made by B. was calculated to stifle competition at the sale, which, on that account, under the charge of fraud made in the complaint, might be avoided; but as no party to this cause objects, and A. admits the trust and asks that it be carried into effect, the court will so decree.

4. The Statute of Limitations cannot avail the defendants, as it was not pleaded, and less than six years had elapsed since Mrs. A. was ousted by C. of her possession.

5. The decree of the court should fix a time within which Mrs. A. must make the stipulated payments, with an alternative provision for its payment out of the land, in case of her failure to do so.

Before PRESSLEY, J., Darlington, March, 1881.

In this case, Honorable Joseph B. Kershaw, of the Fifth Judicial Circuit, sat in the place of Mr. Justice McIver, who had been of counsel in the cause.

Action commenced in September, 1876, by C. J. Coney and Mary A., his wife, against W. B. Timmons and R. B. Garner, and afterwards, upon the death of Garner, revived against his administrator and heirs-at-law. The case is fully stated in the Circuit decree, which was as follows:

In September, 1867, H. E. P. Sanders, the United States Internal Revenue Collector, sold for taxes seventy-five acres of land, near Timmonsville, as the property of C. J. Coney, and it was bought by W. B. Timmons for $97.50.

J. B. O'Neall Divver was at the sale and had requested Mr. Keith to bid for said land, in behalf of Divver, to the amount of $150. He did not do so, because Timmons told them that he wished to buy the land to secure it to Mrs. Coney, and his statement to same effect is proven by other witnesses. None of them prove the terms of the arrangement between Coney and Timmons for securing the land to her. On that point, there is no

testimony but that of Coney and Timmons, who differ widely in their statements. Coney says he paid the purchase-money, and that Timmons was to hold the land in trust for Mrs. Coney. Timmons says that he, himself, paid the purchase-money; that Coney was to repay that, and also a confidential debt due to Timmons by Coney; also an amount due by him for store rent— the sum not stated. The confidential debt arose thus: Timmons, as sheriff, had sold certain mules to Coney, and delivered them to him, on his promise to pay his bid or return the mules. He did not pay, but, after considerable delay, he returned mules which Timmons says were not those he had sold, but were inferior. Coney says he returned the right mules, except one, which he kept, placing another in its stead. His bid for mules was $485. They brought only $185 at the resale, and Timmons was compelled to pay the $300 difference to the execution creditor. This $300, the store rent, and $97.50 bid for the land, Timmons says, was to be paid by Coney before his wife was to have the land. He waited a month or more for Coney to fulfill his promise, and then being pressed and required by Sanders to comply with his bid, he (Timmons) paid the same and received an absolute title to himself. He allowed Mrs. Coney to take possession of the land, rent it out and receive the rents, because he still expected Coney to comply with his promise.

In November, 1870, the sheriff of Darlington levied on and sold the said land to R. B. Garner, under an execution against Timmons, and at the end of that year Garner got possession and has held the land ever since. He had notice, at the sheriff's sale, of Mrs. Coney's claim, and previously knew that she was in possession of the land.

Being compelled to rely either on the testimony of Timmons, or on that of Coney, in settling the most material point of the case, I choose that of Timmons, partly because he is less interested than Coney, who testifies in behalf of his wife, and partly because the statement of Timmons is more consistent with the unpleasant relations then pending between him and Coney about the mules.

I therefore find that Mary A. Coney was in possession of said land under a valid contract, that it was to be held by Timmons

in trust for her, whenever he should be paid the items before stated, and that R. B. Garner has succeeded to the rights and the obligations of Timmons in that matter. Garner and his heirs have had possession from January, 1871, until now. He greatly improved the land by the yearly use of fertilizers and high cultivation, and the rental value thereby is greater now than it was before he improved it. Since this suit began, Garner died, and his administrator and heirs-at-law have been made parties thereto.

*It is adjudged and decreed,* That Mary A. Coney is entitled to an account from Garner's administrator and heirs-at-law respectively, of the rents and profits of the said land from the first of January, 1871, until the end of this year, the said rent to be estimated, not according to the present improved condition of the land, but according to its condition at the time Garner got possession. If the said rent, estimated and applied annually, shall fully pay the said sums of $300 and $97.50, and the store rent testified to by Timmons, with interest thereon, at the end of this year, the said land is to be conveyed to Mary A. Coney in fee. If the rents do not pay the said debts, with interest, then the land is to be conveyed to her whenever, after the end of this year, she shall pay the balance due thereon. And if the said rents shall exceed the said debts, with interest, then the amount of the excess is to be paid to the said Mary A. Coney, by the administrator of Garner, out of the assets of his intestate in due course of administration.

*It is further ordered,* That the clerk of the court take the testimony, and report the value of said rents, according to this decree; also the amount of the store rent, and the date from which it and the $300 should bear interest. That he also state the account, showing the amount of the balance on either side after applying the rents to the said debts.

To this decree, exceptions were filed by all parties, and appeal taken to this court.

Plaintiffs' exceptions were as follows:

1. Because the evidence showed that the defendant, Timmons, bid off the land at the sale by Sanders, at far below its value,

on representations that it was for the benefit of M. A. Coney; that thereby an express technical trust was created in favor of said plaintiff, and his Honor erred in holding that the same was in any way affected by any arrangement subsequently made between the said Timmons and C. J. Coney.

2. Because of error on the part of his Honor, the presiding judge, in holding that M. A. Coney was chargeable for anything more than $97.50, the amount of the bid of said Timmons, on his construction of the evidence, which is excepted to as an error of fact (the evidence establishing that he had received $100 from C. J. Coney to pay such bid).

3. Because, from the evidence, the plaintiff was entitled to the land, with the rents of the same from January 1st, 1871, and his Honor should have so decreed.

4. Because his Honor should have ordered an account between the parties to ascertain the true indebtedness of C. J. Coney to W. B. Timmons, instead of ordering a specific sum to be allowed said Timmons on his own evidence.

Defendants' exceptions were as follows:

1. Because the Circuit judge erred in stating as a conclusion of fact that W. B. Timmons allowed M. A. Coney to take possession of the land, whereas it appears from the testimony that Coney and wife were in possession of the land before the sale to Timmons, and continued to retain possession thereafter without leave or license from Timmons.

2. Because the Circuit judge erred in holding, on the facts of the case and the law applicable to the same, that M. A. Coney had rights and equities in and to the premises in question enforceable in a court of justice, at the time the same were conveyed to R. B. Garner.

3. Because, if M. A. Coney had rights and equities in and to the premises in question at the time of the conveyance to Garner, she lost the same thereafter by her *laches,* and the Circuit judge should have so held.

4. Because the agreement found as a matter of fact by the presiding judge, not having been reduced to writing, was void,

by reason of the Statute of Fraud, and his Honor, the presiding judge, should have so held.

*Mr. W. W. Harllee*, for plaintiffs.

*Messrs. Boyd & Nettles*, for defendants.

January 12th, 1882. The opinion of the court was delivered by

KERSHAW, A. A. J. We do not find sufficient reason to disturb the findings of fact upon which the Circuit judge based his decree. There is sufficient evidence to sustain them. We shall, therefore, determine the questions made by the appeals upon the state of facts so ascertained.

The case thus presented is substantially as follows: The plaintiff, Mary A. Coney, is the wife of C. J. Coney, the co-plaintiff. In September, 1867, the land which is the subject of this action was the property of the said C. J. Coney. It was then sold under an execution against him for taxes due to the United States. It was bought by the defendant, W. B. Timmons, at such sale, under an agreement that it was to be held by him in trust for the plaintiff, Mary A. Coney, whenever he should be paid the price at which he purchased and certain sums of money due to said Timmons by C. J. Coney. This agreement was not in writing, but was established by parol evidence.

There was evidence in the case tending to show that Timmons represented himself, before the sale, as bidding for Mrs. Coney, and that, in consequence of such representation, he purchased the land at an under value. This evidence seems to have been adopted as true by the Circuit judge and is incorporated in his decree.

Titles to the land were duly made to Timmons, and he suffered Mrs. Coney to occupy the same and receive the rents therefor. On November 3d, 1870, Mrs. Coney still being in possession of the land, it was sold under a judgment and execution against W. B. Timmons, at the suit of G. W. Williams & Co., after due levy and advertisement by the sheriff, and pur-

chased by R. B. Garner, the defendant, who paid the purchase-money and received titles therefor. Garner, at the time of the purchase, had notice of the rights of Mrs. Coney in the premises.

We do not regard the contract under which Mrs. Coney claims as a conditional one, to be fully performed on her part before she acquired any rights thereunder. No time was specified for the payment by her of the considerations of the agreement, and she was let into possession immediately. As stated in the decree, it was a unilateral contract, there being no express engagement by Mrs. Coney to comply with it; but an implied promise to pay the considerations arose when she assumed the possession of the land under the contract. She became bound by it when she accepted the benefits of it. There being no definite time fixed for the performance on her part, she will not be held to have lost the benefit of the contract by delay until some act was done, or notice given by the other party, requiring performance. Either party might have demanded performance within a reasonable time, and the contract might thus have been waived or forfeited by non-compliance. *Seton* v. *Slade*, 2 *Lead. Cas. Eq.*, Pt. 2, *537, *Am. Notes; *Prothro* v. *Smith*, 6 *Rich. Eq.* 324.

But here no such demand was made, and the agreement remained a subsidiary contract at the time of Garner's purchase, of which he had notice. He therefore became bound by all the obligations of Timmons in relation thereto. *Massey* v. *Mc-Ilwain*, 2 *Hill Ch.* 426.

Aside from the fact of possession by Mrs. Coney, such a contract, not in writing, would be void under the Statute of Frauds. *McDonald* v. *May*, 1 *Rich. Eq.* 91.

Change of possession has long been held to take a case out of the statute on the ground of fraud. It was held that a party receiving a benefit under an agreement could not set up the statute against it, as that would be a fraud, and the statute, intended to prevent frauds, could not be employed to enable a party to perpetrate a fraud. Upon this principle many authorities held that only the party injured by part performance could set up the contract, while the other party would be precluded by the statute from insisting upon its enforcement. *Rob. Fr.* 138; *Buckmaster* v. *Harrop*, 7 *Ves.* 347. But here it has

been settled that a party who is in possession under a parol agreement to purchase may claim its performance, because, otherwise, he might be treated as a trespasser. 2 *Story Eq.* 761 ; *Smith* v. *Smith*, 1 *Rich. Eq.* 136 ; *Kine* v. *Balfe*, 2 *Ball & B.* *347.

While these authorities are sufficient to sustain the Circuit decree, we think it may also stand upon another principle. It is well established, in this State, that where land has been purchased at an execution sale, either under an agreement to purchase for the benefit of the debtor or of his family, or where the purchaser (there being no agreement) represents himself as so purchasing, and, in consequence, competition is stifled, or the land is bought at an under value, the sale cannot stand. *Kinard* v. *Hiers*, 3 *Rich. Eq.* 423 ; *McDonald* v. *May*, 1 *Rich. Eq.* 98 ; *Schmidt* v. *Gatewood*, 2 *Rich. Eq.* 177 ; *Cox* v. *Cox*, 5 *Rich.* 365. If, in consequence of the agreement alleged here, and his actions under it, Timmons prevented even one bidder from competing at the sale, it was a fraud upon the sale and he could not retain the title for his own benefit or transmit the same by alienation to one affected with notice.

The last case on the subject is that of *Johnston* v. *Lamotte*, 6 *Rich. Eq.* 347. There Chancellor Johnston gives the following summary of the law :

1. " The bill may aver a contract without time. In such case, if the defendant deny it and plead the Statute of Frauds, or, at the hearing, objects to parol proof, or if he admit the contract and plead the statute, the contract cannot be established by parol—the bill must be dismissed. 2. The bill may aver a contract, and may also charge and set out circumstances of fraud. In such cases * * * whether the defendant admit or deny the contract, it is competent for the plaintiff to waive such portion of the pleadings as relates to the contract and proceed entirely upon the fraud. 3. The plaintiff may file his bill upon the fraud alone, which is certainly the better method of pleading. In this case the defendant has no resource but to deny the fraud, and leave the issue to depend upon the proofs, unless he choose to set up the contract by way of exonerating himself from the

fraud charged against him, in which case he must perform the contract."

There had been some difference of opinion upon the subject between Chancellor Johnston and his brethren of the bench, and he himself tells us that he had in consequence taken "some pains" to set forth a summary of the law with much explicitness. As the whole court concurred in sustaining the decree in *Johnston* v. *Lamotte,* the law may be regarded as settled in accordance therewith. It would follow that if an agreement of this character were made, and were so acted on by the purchaser as to procure the land at an under value, in consequence of its use to stifle competition, the statute is avoided where the plaintiff proceeds upon the ground of fraud.

In this case the agreement is alleged in the complaint, and the use made of it to procure the purchase at an under value. It does proceed upon the ground of fraud, and charges it explicitly. According, therefore, to the doctrine laid down in the cases cited the plaintiffs are entitled to relief. Upon the facts which appear here the sale to Timmons might properly be avoided. If the judgment of the court went no further the effect would be to leave the title to the land in C. J. Coney. But he is a party here, and admits by his pleading that it is subject to the trust claimed, and joins with her in asking that it be carried into effect by the judgment of the court. There is no one before the court who has any right to object. There is no reason, therefore, why the court should not do that which will meet all the equities of the case as presented, and this is substantially accomplished by the Circuit decree.

The Statute of Limitations, the benefit of which is claimed by the defendants, was not pleaded, nor had six years elapsed from the time when Mrs. Coney was ousted from the possession of the land (and time did not run against her before), wherefore this statute cannot avail the defendants. We do not find anything in this case to authorize the application of the doctrines of laches, waiver, &c.

The only other matter to be mentioned is that the Circuit decree does not fix any time within which Mrs. Coney is required to pay any balance that may remain due by her upon the account-

ing directed. In the further orders to be taken a day should be named for such payment, if anything be due by her, with an alternative provision for its payment out of the land in case of her failure to do so.

The judgment below is affirmed, and the case is remanded to the Circuit Court to carry the same into effect.

SIMPSON, C. J., and McGOWAN, A. J., concurred.